IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 118,204

In the Matter of MATTHEW EDGAR HULT,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed February 16, 2018. Indefinite suspension.

*Kimberly L. Knoll*, Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett*, Disciplinary Administrator, was with her on the formal complaint for the petitioner.

*Matthew Edgar Hult*, respondent, appeared pro se.

PER CURIAM: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Matthew Edgar Hult, of Olathe, an attorney admitted to the practice of law in Kansas in 2012.

On March 14, 2017, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). The respondent failed to file an answer. On May 15, respondent emailed a document titled Motion to Continue the hearing date. The hearing panel filed an order on May 17, denying respondent's motion. On May 19, respondent filed a proposed probation plan. On May 23, respondent filed a document entitled "pleading" in which he admitted that he violated KRPC 1.1, 1.3, 1.5, 1.16, 3.2, 3.4(c), 8.3, and 8.4(d), and Kansas Supreme Court Rules 207 and 211. Respondent also stipulated that he violated KRPC 8.1(b); however, the disciplinary administrator did not charge respondent with violation of that rule. A hearing was held on the complaint before a panel of the

1

Kansas Board for Discipline of Attorneys on May 23, where the respondent was personally present. The hearing panel determined that respondent violated KRPC 1.1 (2018 Kan. S. Ct. R. 289) (competence); 1.3 (2018 Kan. S. Ct. R. 292) (diligence); 1.4(a) (2018 Kan. S. Ct. R. 293) (communication); 1.5 (2018 Kan. S. Ct. R. 294) (fees); 1.15(a) (2018 Kan. S. Ct. R. 328) (safekeeping property); 1.16(d) (2018 Kan. S. Ct. R. 333) (termination of representation); 3.2 (2018 Kan. S. Ct. R. 343) (expediting litigation); 3.4(c) (2018 Kan. S. Ct. R. 347) (fairness to opposing party and counsel); 8.4(d) (2018 Kan. S. Ct. R. 381) (engaging in conduct prejudicial to the administration of justice); 8.3(a) (2018 Kan. S. Ct. R. 380) (reporting professional misconduct); Kansas Supreme Court Rule 207(c) (2018 Kan. S. Ct. R. 246) (failure to report action); and Kansas Supreme Court Rule 211(b) (2018 Kan. S. Ct. R. 251) (failure to file answer in disciplinary proceeding).

Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

"*Findings of Fact*

. . . .

"DA12242

"12.    After being admitted to practice law in Kansas, the respondent established an immigration practice. In addition to his Kansas office, the respondent opened an office in Sioux City, Iowa. While the respondent was not licensed to practice law in the state courts of Iowa, his license to practice law in Kansas authorized him to practice immigration law in Iowa under Iowa Rule 32:5.5, which provides as follows:

2

'(d) A lawyer admitted in another United States jurisdiction, and not disbarred or suspended from practice in any jurisdiction, may provide legal services in this jurisdiction that:

. . . .

(2) are services that the lawyer is authorized to provide by federal law or other law of this jurisdiction.'

"13. In Iowa, when an attorney establishes a practice under Iowa Rule 32:5.5(d)(2), the attorney must comply with Iowa Rule 39.16:

'An attorney who establishes an office or other systematic and continuous presence in Iowa for the practice of law under the provisions of rule of professional conduct 32:5.5(d)(2) shall file the annual statement required by rule 39.8(1) and annual questionnaire required by rule 39.11, pay the annual fee and assessment due under rules 39.5 and 39.6, comply with all provisions of chapter 45, cooperate with investigations and audits under rule 39.10, and be subject to the provisions of rule 39.12.'

The respondent failed to file the annual statement required by Iowa Rule 39.8(1), failed to file the annual questionnaire required by Iowa Rule 39.11, failed to pay the annual fee and assessment due under Iowa Rules 39.5 and 39.6, and failed to maintain a trust account as required by Iowa rule 45.1 ('funds a lawyer receives from clients or third persons for matters arising out of the practice of law in Iowa shall be deposited into one or more identifiable interest-bearing trust accounts located in Iowa').

"14. In April 2013, the respondent was notified of his obligations under the Iowa rules by the Office of Professional Regulation of the Iowa Supreme Court. The correspondence directed the respondent to comply with the provisions of the rules within 30 days. The respondent failed to comply with the directives contained in the correspondence.

3

"15.    On December 9, 2013, the respondent completed the statement and questionnaire. In the questionnaire, the respondent disclosed that he did not keep all funds of clients for matters involving the practice of law in Iowa in separate interest-bearing trust accounts located in Iowa. The respondent also stated that all retainers, regardless of size, are not deposited in his trust account. For further explanation, the respondent stated that he does not keep client funds, that he worked only on immigration cases, that all fees are earned on a flat fee basis, and that the flat fees are deposited into his business account. Along with the statement and questionnaire, the respondent forwarded the fee in the amount of $225.00 to the Iowa registration authority

"16.    In January 2014, the respondent notified the registration authority in Iowa that he was closing his Sioux City office. Because his December 2013, statement and questionnaire had not been processed yet, the registration authority in Iowa withdrew the respondent's statement and questionnaire and returned the fee paid.

"17.    On February 28, 2014, the respondent vacated his office space in Sioux City, Iowa. However, the respondent continued to maintain a website advertising his immigration law practice in Iowa.

"18.    Sometime in 2014, a complaint was filed against the respondent with the Iowa attorney disciplinary board for his failure to comply with the trust account rules and the multijurisdictional practice registration rules.

"19.    On October 27, 2014, Charles Harrington, the Administrator for the attorney disciplinary board, wrote to the respondent. The letter provided:

'The above complaint filed against you came on for reconsideration by the Board at its recent hearing meeting.

'The Board found that at all times relevant to the complaint you maintained an office in Sioux City for the practice of federal immigration law. You were admitted to the practice of law in Kansas but not in Iowa except as permitted by Iowa R. Prof'l Conduct 32:5.5(d)(2). The Board

4

has jurisdiction as to your professional conduct in Iowa pursuant to Iowa R. Prof'l Conduct 32:8.5(a) (lawyer not admitted in Iowa is subject to disciplinary authority of Iowa if lawyer provides or offers to provide any legal services in this state).

'In April 2013, you received correspondence from the Office of Professional Regulation of the Supreme Court of Iowa (OPR) that you were required to comply with Iowa Ct. R. 39.16 (attorneys practicing in Iowa under multijurisdictional practice rule) and other rules regulating multijurisdictional practice in the state. This included detailed information about relevant provisions of the Iowa Rules of Court, including chapter 32 (Rules of Professional Conduct), chapter 39 (Client Security Commission), and chapter 45 (Client Trust Account Rules). OPR's letter emphasized in bold font, "**The** [Client Security Commission Combined Statement and Questionnaire] **report form due in 2013 is enclosed. You must prepare and file this form with our office within 30 days after the date of this memorandum, with the fees shown on the form and described below.**"

'You continued to practice immigration law in Iowa for another eight months without filing the required report and paying the fees. Finally, in December 2013 you belatedly filed the report and paid the fees. (In early 2014 you closed your office in Sioux City and the Board has received no information indicating you continued to practice in Iowa.)

'The Board concluded that your practice in Iowa for many months without timely compliance with rule 39.16 was contrary to Iowa R. Prof'l Conduct 32:5.5(a) (lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction).

'The Board's investigation disclosed another serious concern regarding your former practice in the state. In the statement you filed with the Client Security Commission in December 2013, you acknowledged you

5

did not keep all funds of clients for matters involving the practice of law in Iowa in a client trust account and that you did not even have an Iowa trust account. You explained you charged only flat fees, not "retainers." The Board found that you considered these flat fees to be earned upon receipt and prior to completion of the clients' cases.

'Although you sought to distinguish a flat fee from a retainer, Iowa case law holds that a flat fee is a "special retainer" and must be deposited into a client trust account, to be withdrawn only as earned. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Denton*, 814 N.W.2d 548, 551 (Iowa 2012) (reprimanding Colorado lawyer for failing to deposit a flat fee paid by Iowa client in federal immigration matter into a client trust account). Iowa R. Prof'l Conduct 32:1.15(a) requires a lawyer to hold a client's funds separate from the lawyer's own funds. 32:1.15(c) provides that "[a] lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred."

'Iowa Ct. R. 45.10 specifically addresses the handling of flat fees.

"(1) *Definition.* A flat fee is one that embraces all services that a lawyer is to perform, whether the work be relatively simple or complex.

"(2) *When deposit required.* If the client makes an advance payment of a flat fee prior to performance of the services, the lawyer must deposit the fee into the trust account.

"(3) *Withdrawal of flat fee.* A lawyer and client may agree as to when, how, and in what proportion the lawyer may withdraw funds from an advance fee payment of a flat fee. The agreement, however, must

6

reasonably protect the client's right to a refund of unearned fees if the lawyer fails to complete the services or the client discharges the lawyer. In no event may the lawyer withdraw unearned fees."

*See* Iowa R. Prof'l conduct 32:1.15(f) (requiring compliance with chapter 45 rules).

'The Board concluded you violated rules 32:1.15(a), 32:1.15(c), and 32:1.15(f) by failing to maintain a client trust account in Iowa and by failing to deposit advance flat fee payments into such an account.

'It was the determination of the Board that you be and hereby are publicly reprimanded for violating Iowa's client trust account and multijurisdictional practice rules.'

"20.     Also on October 27, 2014, the Clerk of the Grievance Commission of the Supreme Court of Iowa wrote to the respondent, enclosing a copy of the Iowa attorney disciplinary board's letter and notifying respondent that he had 30 days to file exceptions to the Board's letter. The respondent failed to file exceptions to the board's letter.

"21.     On January 15, 2015, the Iowa Supreme Court publicly reprimanded the respondent.

"22.     The Iowa disciplinary authority forwarded the materials to the Kansas disciplinary administrator. The Kansas disciplinary administrator docketed the materials as a complaint against the respondent. On January 28, 2015, the disciplinary administrator sent a letter to the respondent directing the respondent to file a response to the complaint within 20 days.

"23.     On February 13, 2015, the respondent filed a response to the complaint, stating in relevant part:

7

'Firstly, I would like to explain the situation that took place in Iowa. I had a small office there to handle only Federal Immigration cases, which I can practice in all fifty states of the U.S.A. The Iowa Bar contacted me and wanted me to pay a fee for being a lawyer practicing in the state, but not licensed in Iowa. So I paid the fee. Then I decided to close the office in Iowa. That is when I was contacted by the office, and was told that they would refund the fee to me, because I was not going to be practicing in Iowa. They then refunded the fee, and I made arrangements with the office rental company to close and move out of the office, which I did. No deadlines were ever issued to me on when I had to leave the State.

'Subsequently, after closing the office they filed a complaint against me for not closing the office and for not paying the fee. I submitted to them a written letter from the property company that I had indeed closed the office. The part where I faltered was that I did not shut down the office website immediately, and to the disciplinary agency in Iowa that was evidence that I was still practicing there. So I then submitted documents that showed I did indeed shut down the website, and had vacated the office, and the State of Iowa.

'The above actions did not satisfy them. They did not set any deadline for me to close the business, and I did pay the fee, but they returned it to me. I provided evidence that I had closed the office and left the State. I feel like they are treating me unfairly since I am not a licensed attorney in the State of Iowa, but there was no reasoning with them, even after I submitted the necessary evidence. They decided to railroad me because they knew I would have no ability to defend myself. I object to their decision to file a complaint against me.'

In his response, the respondent did not address his failure to establish and maintain a trust account in Iowa. Additionally, respondent did not acknowledge his failure to comply with the Iowa multijurisdictional practice registration rules.

"24.     In 2014, J.W. retained the respondent to obtain citizenship for his two step-children who were residing in Kenya. According to the fee agreement, J.W. retained the respondent on May 29, 2014. According to J.W., he retained the respondent on September 1[6], 201[4].

"25.     In the fee agreement, J.W. agreed to pay the respondent $1,160 for attorney fees and $840 for filing fees. J.W. paid the fees over time. By January 26, 2015, J.W. had paid the respondent in full.

"26.     The respondent did not deposit the $840.00 paid for filing fees into an attorney trust account. The respondent did not have a trust account.

"27.     On September 26, 2014, J.W. and his wife, T.W., wrote to the respondent seeking an update regarding the status of the representation. On September 29, 2014, the respondent responded to J.W., stating, 'Everything is moving ahead, we should be getting receipts for their cases from the government in a couple of weeks.'

"28.     J.W. and T.W. called the respondent by telephone multiple times. The respondent failed to return J.W. and T.W.'s telephone calls.

"29.     On November 24, 2014, J.W. and T.W. wrote to the respondent, again seeking a status update. Although the record does not contain the respondent's response, he clearly responded to J.W. and T.W.'s inquiry. Later, on November 24, 2014, J.W. and T.W. thanked the respondent for the response and requested the United States Custom and Immigration Services ('USCIS') receipt numbers. At that time, they reminded the respondent that J.W.'s mother also wished to sponsor the children. The respondent did not provide J.W. and T.W. with the USCIS receipt numbers.

"30.     On January 6, 2015, J.W. wrote to the respondent:

9

'I am writing to ask please, please [*sic*] respond to my text and phone calls, You are our hope!!!!!! I've [*sic*] called and text [*sic*] without any returns, or guidance please let me know of any progress if any. Are you waiting for full payment to help us??? Please if so let us know immediately as I will send it now. Also please send receipts for payment sent. I don't [*sic*] see why you don't [*sic*] send updates periodically, you [*sic*] do carry our our [*sic*] hope in your hands. Please understand our concerns and send updates immediately.'

"31. On January 7, 2015, the respondent responded to J.W. and T.W.'s inquiries:

'My assistant says you have been trying to reach. [*sic*] I apologize for not responding, but I am away on vacation since Christmas. This is our slowest time of year so, it is only time I can get away.

'Please email me any questions.

'Also, I need this Joint sponsor form filled out by [J.W.]'s mother. Please print it off and have her do her best, I can fill in most of it. Most importantly have her sign it, and send it to [*sic*] Leawood office, along with 2013 tax returns and W-2s.

'Sorry for the delay, but everything is moving along at government speeds.'

Despite the November 24, 2015, communication that J.W.'s mother wished to also sponsor the children, it appears that the respondent did not provide J.W. and T.W. with the appropriate forms until January 7, 2015.

"32. On March 3, 2015, T.W. wrote to the respondent:

'Hope this email finds you well. My husband and i [*sic*] called USCIS about the progress of our children's visa process but sadly they have no such records meaning their cases have not been filled. [*sic*]

'As a mother I am very! very! depressed about this issue and i would appreciate if you would let me know when you will be able to begin the process. if you are not in position to file for our children as soon as i thought you should have done already then please sir avail the documents to us so that we can start the process as soon as we can.

'Thanking you in advance for your co-operation [*sic*] on this matter.'

"33. That same day, the respondent responded to T.W.'s email message and stated, 'I will address your concerns as soon as I can figure out the reason for the delay.' The respondent's response indicates that he must look into what was causing the delay. The respondent knew that he had not filed the cases. J.W. and T.W. did not hear from the respondent again.

"34. On May 11, 2015, J.W. filed a complaint against the respondent.

"35. On June 4, 2015, the respondent provided a written response to J.W.'s complaint. The respondent's written response is inconsistent with his email messages to J.W. and T.W.:

'Thank you for the chance to allow me to respond to the allegations and complaint filed by [J.W.] against me.

'My office will be refunding the application fees to [J.W.] in the amount of $840.00. I have included exhibit 1 which is the copy of the check with the above amount.

11

'[J.W.] fired my office after we had taken substantial steps in preparing his case. When I took the case I explained the fee agreement to him that we would continue to work on the case and represent him, while he made payments to complete the fee agreement attorney fees. He included the checks that he had mailed to us in furtherance of this agreement.

'Unfortunately, we are usually hesitant to file applications until we are paid in full for our services, due to client's not paying for our services once we have filed for the services the client has obtained. That is why it is necessary in our fee agreements that we make it known that we will submit the documents once all payments are received.

'We also did not receive all documentation from the above complainant. It was necessary for them to get joint sponsors due to their income not meeting the necessary poverty level to support an immigrant. So I met with them in March, 2015 to help complete the forms and to make an action plan to obtain the necessary joint sponsors. [J.W.] said he was going to get his mother and brother to be joint sponsors and he would get their signatures and tax information to me. They never did.

'In Conclusion, [*sic*] I spent many hours preparing the applications for [J.W.], and spent hours traveling to see him in Joplin, MO and counseling him on his case to better prepare his applications. I am disappointed he did not want to see the case through, since I had previously assisted him in bringing his wife to the U.S.A. There must have been a miscommunication along the way. It was his privilege to fire me under the fee agreement, and therefore I am refunding the amount of for [*sic*] the application fees of $840.00.'

"36. E.V., an Australian citizen, worked for Parnell Corporate Services US, Inc. as the Director of Human Resources. E.V. travels between Australia and the United States frequently. As a result, she is required to have an E-2 Visa.

"37. E.V.'s Visa was scheduled to expire on April 18, 2014. On March 25, 2014, E.V. contacted the respondent to renew her Visa. They met on March 28, 2014. The respondent assured E.V. that he had experience assisting clients in obtaining this specific Visa. E.V. provided a copy of the materials used to obtain her original Visa. She explained to the respondent that she was scheduled to travel to Australia in July 2014, and asked whether the process would be complete by then. The respondent assured her that there was plenty of time to submit the application. E.V. asked the respondent if she needed to leave the country before her current Visa expired. The respondent advised her she did not need to leave the United States.

"38. On April 16, 2014, the respondent submitted her application.

"39. On June 16, 2014, E.V. told the respondent that she would be leaving for Australia in a month. She wanted to know if the application would be approved by her departure date.

"40. A week before E.V. was scheduled to travel to Australia, she contacted the respondent to check on the status of the application. E.V. asked if she could come back into the country if the application had not been approved. The respondent advised her she could return and suggested that she apply for a Visa waiver.

"41. While E.V. was on board the plane on her way to Australia, she received an e-mail message from the respondent that her Visa had been approved. She expressed her concern that the respondent could not physically get the Visa to her because she was only going to be in Australia a short time. The respondent advised E.V. to enter the United States on the Visa waiver.

13

"42.     A week later, E.V. asked the respondent for her new Visa. The respondent advised her that she should enter [the] United States on the waiver.

"43.     After she returned to the United States on a Visa waiver, E.V. again asked the respondent for her new Visa. The respondent advised E.V. that he had been out of town but he would send it to her shortly.

"44.     Later that week, E.V. received an envelope in the mail with an I-94 extension, not the new E-2 Visa she believed she had applied for. Since her original Visa had expired and she had left the country, the I-94 extension was essentially useless, and did not permit her to work in the United States or to freely enter and leave the United States as an E-2 Visa would; and if she did enter, she could not work and would have to leave after a maximum of three months.

"45.     Eventually the respondent directed E.V. to a website that provided guidance to persons wishing to obtain a new Visa who are located outside the United States. The information was not applicable, because E.V. had entered the country on the waiver and was inside the United States.

"46.     The respondent avoided future attempts by E.V. to contact him. The respondent sent E.V. a letter terminating the representation and suggesting that she contact new counsel. E.V. did hire new counsel, but she was required to travel back to Australia to obtain an E-2 Visa from the embassy and could not work in the United States (or get paid) for close to three months until the E-2 Visa was obtained.

"47.     On November 10, 2014, E.V. and her employer sued the respondent for malpractice. The case was filed in the Johnson County District Court. After proper service, the respondent failed to file an answer to the petition. As a result, E.V. and her employer filed a motion for default judgment. The respondent failed to file a response to the motion for default judgment.

"48.     On April 23, 2015, the court entered default judgment against the respondent. The respondent was ordered to pay $22,906.26 in total damages. The respondent failed to pay the judgment.

"49.     In August, 2015, E.V. and her employer filed a garnishment action. E.V. and her employer obtained proper service on the respondent on August 12, 2015. Additionally, E.V. and her employer served the respondent with a subpoena seeking financial information. The respondent did not respond to the garnishment action nor did he provide the documents as required by the subpoena.

"50.     On October 2, 2015, E.V. and her employer filed a motion for an order to show cause. The court scheduled a hearing on the motion for November 2, 2015. The respondent failed to appear at the hearing. During the hearing, the court found the respondent in contempt and scheduled a sanctions hearing for December 2, 2015.

"51.     On December 2, 2015, respondent appeared at the sanctions hearing. The court directed the respondent to provide the financial information within 30 days. According to the respondent, he provided the financial information as ordered.

"DA12515

"52.     In 1960, C.W. was born in the United Kingdom. In 1977, she became a naturalized United States citizen. In 1988, she married a United States citizen.

"53.     At the time C.W. became a naturalized United States citizen, she was required to renounce her British citizenship. With a recent change in the law, she decided to re-establish her British citizenship and to obtain a British passport. On September 17, 2013, C.W. retained the respondent to assist her with these two matters. C.W. hired the respondent because he was an immigration attorney located near where she lives. C.W. paid the respondent $1,000 for the representation.

15

"54.    C.W. explained to the respondent that she wanted to make sure she would not face any issues if she became a dual citizen, *e.g.*, taxes, international travel, etc.

"55.    Even after she retained the respondent, C.W. continued to conduct research on dual citizenship. Through her research, she learned that she was still considered a British citizen and all she needed to do was fill out a British passport application. She asked the respondent to confirm the information she discovered. The respondent confirmed that she remained a British citizen and all she needed to do was complete a British passport application. (At the time C.W. retained the respondent, the respondent did not indicate to her that she remained a British citizen and only needed to file an application for a British passport.)

"56.    On June 19, 2014, C.W. delivered the completed passport application, fee, and all the documentation to the respondent. C.W. asked the respondent to send in the application and handle the processing. C.W. asked the respondent to oversee the passport application process so that it would be handled in an expedient and careful manner. C.W. asked the respondent to have someone in England, through his legal contacts as an immigration attorney, walk the materials to the passport office and pay personal attention to her application. She was concerned about shipping original documents.

"57.    On November 14, 2014, the respondent informed C.W. that the United Kingdom required a color copy of her United States passport. On November 17, 2014, C.W. delivered the color copy of her United States passport to the respondent.

"58.    Over the course of the next 12 months, C.W. repeatedly asked the respondent for updates regarding her passport application. The respondent generally responded to C.W.'s email messages. However, in each of the messages, the respondent repeatedly told C.W. to give it more time.

"59.    On December 27, 2015, C.W. received a letter from the British Passport Office indicating that the office had not received a reply to their November 26, 2015,

16

email message requesting specific documentation. C.W. had not received an email message dated November 26, 2015, from either the British Passport Office or forwarded from the respondent.

"60.     C.W.'s passport application was not complete. The British Passport Office provided C.W. until '07012016' to make her application complete. The respondent believed that 07012016 meant July 1, 2016. However, in the United Kingdom, 07012016 means January 7, 2016.

"61.     On January 28, 2016, C.W. received a letter from the British Passport Office. The British Passport Office canceled her application and returned her documents.

"62.     On February 1, 2016, the respondent informed C.W. that she needed to fill out a new application.

"63.     On February 10, 2016, C.W. completed an online British passport application. C.W. had to pay $149.32 for the application fee and $55.40 to have the passport delivered to her. Nine days later, with no assistance from the respondent, C.W. received her British passport.

"64.     C.W. requested a refund of the unearned fees, the application fee, and the shipping fee. The respondent agreed to refund $250.00. However, C.W. did not accept the $250.00, as she did not believe that it was a sufficient refund.

"KANSAS SUPREME COURT HEARING & TEMPORARY SUSPENSION

"65.     Following the disciplinary hearing in this matter, the hearing panel recommended that the Kansas Supreme Court consider whether the respondent should be temporarily suspended from the practice of law during the pendency of these disciplinary proceedings under Kan. Sup. Ct. R. 203(b).

"66.     In particular, the hearing panel indicated that the recommendation for a temporary suspension was motivated by the following factors:

17

'●     The respondent testified that he did not know what an attorney trust account was and has never had an attorney trust account, though he accepts fee deposits from clients for work not yet completed and expenses yet to be incurred.

'●     The respondent indicated through his testimony that he did not have a reliable method of tracking timekeeping, issuing engagement letters, or communicating with his clients regarding his hourly rate, his method of billing, or case status.

'●     The respondent testified that he did not have an attorney mentor or anyone to assist him in matters of office management, practice, or substantive legal guidance.

'●     The respondent's testimony demonstrated that he lacks a basic understanding of many foundational principles, from the need to file an answer or respond to court orders and subpoenas to the difference between American and European date formats (month-day-year versus day-month-year).

'●     The respondent testified that he currently has 30 immigration clients.'

"67.     On June 15, 2017, the Kansas Supreme Court held a hearing to determine whether the respondent should be temporarily suspended from the practice of law during the duration of these disciplinary proceedings. Kimberly Knoll, deputy disciplinary administrator, appeared on behalf of the Office of the Disciplinary Administrator. The respondent appeared in person and without counsel. The video recording of the hearing has been archived and is available for the public on the Court's website.

"68.     During the course of the hearing, the respondent indicated to the Court that the account number that he had provided to the Johnson County district court for the garnishment in the malpractice case in DA12439 was his office account, where he had deposited all of the client funds that should have been placed in a trust account.

18

"69.    The respondent also indicated that after he provided the office account number in the garnishment in response to the district court's contempt citation, he opened a new office account and transferred all of the monies from his previous office account to the new account to avoid the garnishment.

"70.    As of the date of the hearing before the Kansas Supreme Court on June 15, 2017 (which was more than three weeks after the respondent's disciplinary hearing), the respondent indicated that he did not have a trust account and continued to maintain client funds in his office account.

"71.    On June 16, 2017, the Kansas Supreme Court temporarily suspended the respondent's law license during the pendency of these disciplinary proceedings.

"*Conclusions of Law*

"72.    Based upon the respondent's stipulations and the above findings of fact, the hearing panel concludes as a matter of law that the respondent violated KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 1.5, KRPC 1.15, KRPC 1.16, KRPC 3.2, KRPC 3.4(c), KRPC 8.3, KRPC 8.4(d), Kan. Sup. Ct. R. 207, and Kan. Sup. Ct. R. 211, as detailed below.

"KRPC 1.1

"73.    Lawyers must provide competent representation to their clients. KRPC 1.1. 'Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.' The respondent was not competent to assist J.W., T.W., and E.V, in their immigration matters. The respondent failed to file necessary paperwork in the immigration cases to achieve the clients' goals. In E.V.'s case, the respondent failed to comprehend the difference between an E-2 Visa, which was necessary for E.V. to work in the United States, and an I-94, which is essentially an extension of the E-2 Visa that expires when a person leaves the country, or a Visa waiver, which does not permit a person to work and only allows a person to be in the United States for up to three months. Further, the respondent was not competent to

19

determine what assistance C.W. needed to accomplish her goals or to understand basic differences in date formatting between the United States and United Kingdom. The hearing panel concludes that the respondent lacked the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation of J.W., T.W., E.V., and C.W., in violation of KRPC 1.1.

"KRPC 1.3

"74.    Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. The respondent stipulated that he violated KRPC 1.3. The respondent failed to diligently and promptly represent J.W. and T.W. by timely preparing and filing documents. Additionally, the respondent failed to timely request additional documentation from J.W. and T.W. to include additional family members as sponsors. The respondent failed to diligently and promptly represent E.V. by filing for and obtaining an E-2 Visa. Finally, the respondent failed to diligently and promptly represent C.W. by timely requesting additional documents from C.W. to provide the British Passport Office. The respondent's lack of diligence caused his clients injury in each case. Because the respondent failed to act with reasonable diligence and promptness in representing his client, the hearing panel concludes that the respondent violated KRPC 1.3.

"KRPC 1.4

"75.    KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' The respondent stipulated that he violated KRPC 1.4. In this case, the respondent repeatedly violated KRPC 1.4(a) when he failed to timely return telephone calls and provide J.W. and T.W. with accurate updates regarding the representation. Accordingly, the hearing panel concludes that the respondent violated KRPC 1.4(a).

20

"76.     KRPC 1.5 provides that '[a] lawyer's fee shall be reasonable.' The respondent stipulated that he violated KRPC 1.5. The respondent agreed that the fee he charged C.W. was unreasonable. Based upon the respondent's stipulation, the hearing panel concludes that the respondent violated KRPC 1.5 by charging C.W. an unreasonable fee.

"KRPC 1.15

"77.     Lawyers must properly safeguard the property of their clients. *See* KRPC 1.15. The respondent stipulated that he failed to properly safeguard his clients' property in violation of KRPC 1.15. Properly safeguarding the property of others necessarily requires lawyers to deposit unearned fees into an attorney trust account. The respondent failed to establish a trust account for his clients located in Kansas. Additionally, the respondent likewise failed to establish a trust account for his clients located in Iowa. In fact, during the hearing in this matter, the respondent indicated that he did not understand what a trust account was and asked one of the panel members to explain it to him. Further, by placing the client funds in his operating account and then reporting that account number in the malpractice garnishment action, the respondent placed his clients' funds in jeopardy of being used to pay the civil judgment against him. By failing to have trust accounts and by failing to deposit unearned fees as well as funds held on behalf of clients into a proper trust account, the hearing panel concludes that the respondent violated KRPC 1.15(a).

"KRPC 1.16

"78.     KRPC 1.16(d) requires lawyers to take certain steps to protect clients after the representation has been terminated. The respondent stipulated that he violated KRPC 1.16(d). KRPC 1.16(d) provides:

'Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other

counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.'

The respondent violated KRPC 1.16(d) when he abruptly terminated his representation of E.V. without providing proper notice or allowing time for E.V. to locate other counsel. The hearing panel concludes that the respondent violated KRPC 1.16(d).

"KRPC 3.2

"79. An attorney violates KRPC 3.2 if he fails to make reasonable efforts to expedite litigation consistent with the interests of his client. The respondent stipulated that he violated KRPC 3.2. In the malpractice case brought against the respondent, the respondent failed to file an answer, he failed to respond to the motion for default judgment, he failed to appear at a scheduled hearing, and he failed to provide financial information in response to a subpoena. As a result, the hearing panel concludes that the respondent caused unnecessary delay in violation of KRPC 3.2.

"KRPC 3.4

"80. 'A lawyer shall not . . . knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists.' KRPC 3.4(c). The respondent stipulated that he violated KRPC 3.4(c). The respondent knowingly disobeyed an obligation when he failed to comply with the Iowa court rules applicable to attorneys practicing under Iowa Court Rule 32:5.5(d)(2). The respondent also knowingly disobeyed rules of a tribunal in the malpractice case. The respondent knowingly disobeyed an order by the court to appear on the order to show cause. Finally, the respondent knowingly disobeyed an order by the court when he failed to timely provide the information required by the subpoena. As such, the hearing panel concludes that the respondent violated KRPC 3.4(c).

22

"81.    'It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice.' KRPC 8.4(d). The respondent stipulated that he violated KRPC 8.4(d). The respondent engaged in conduct that was prejudicial to the administration of justice when he failed to file an answer, failed to respond to the motion for default judgment, when he failed to appear in court, and when he failed to provide the information required by the subpoena in the malpractice case. Further, the respondent indicated in the hearing on the temporary suspension before the Kansas Supreme Court that after eventually providing the district court with [his] operating account number in the garnishment, he opened a new account and transferred all money to that new account in an effort to avoid paying the judgment. The hearing panel concludes that the respondent violated KRPC 8.4(d).

"KRPC 8.3 and Kan. Sup. Ct. R. 207(c)

"82.    The rules that regulate the legal profession require lawyers to report misconduct. Specifically, KRPC 8.3(a) and Kan. Sup. Ct. R. 207(c) provide the requirements in this regard. KRPC 8.3(a) provides that '[a] lawyer having knowledge of any action, inaction, or conduct which in his or her opinion constitutes misconduct of an attorney under these rules shall inform the appropriate professional authority.' Kan. Sup. Ct. R. 207(c) provides:

'It shall be the duty of each judge of this state to report to the Disciplinary Administrator any act or omission on the part of an attorney appearing before the court, which, in the opinion of the judge, may constitute misconduct under these rules.'

The respondent stipulated that he violated KRPC 8.3(a) and Kan. Sup. Ct. R. 207(c). After the Iowa Supreme Court reprimanded the respondent, the respondent was obligated to report the Iowa disciplinary case to the Kansas disciplinary administrator. The respondent, however, failed to report the Iowa misconduct to the Kansas disciplinary administrator. Because the respondent failed to report the misconduct as required, the

23

hearing panel concludes that the respondent violated KRPC 8.3(a) and Kan. Sup. Ct. R. 207(c).

"Kan. Sup. Ct. R. 211(b)

"83.    The Kansas Supreme Court Rules require attorneys to file answers to formal complaints. Kan. Sup. Ct. R. 211(b) provides the requirement:

'The respondent shall serve an answer upon the Disciplinary Administrator within twenty days after the service of the complaint unless such time is extended by the Disciplinary Administrator or the hearing panel.'

Kan. Sup. Ct. R. 211(b). The respondent did not file an answer to the formal complaint. If the respondent intended for the document entitled, 'pleading' to serve as an answer, it was untimely. Accordingly, the hearing panel concludes that the respondent violated Kan. Sup. Ct. R. 211(b).

"*American Bar Association*
*Standards for Imposing Lawyer Sanctions*

"84.    In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"85.    *Duty Violated*. The respondent violated his duty to his clients to provide competent and diligent representation. The respondent violated his duty to his clients to provide adequate communication. The respondent also violated his duty to his clients to properly safeguard their property. The respondent violated his duty to the legal system to comply with court orders. Finally, the respondent violated his duty to the legal profession

24

to cooperate with the disciplinary proceeding by failing to report the Iowa disciplinary case and by failing to file an answer in this case.

"86.    *Mental State*. The respondent knowingly violated his duties.

"87.    *Injury*. As a result of the respondent's misconduct, the respondent caused actual injury to his clients and to the administration of justice. The respondent injured J.W. and T.W. by significantly delaying the immigration of their children from Kenya. The delay caused by the respondent deprived J.W. and T.W. [of] spending time with their children. The respondent injured E.V. E.V. had to leave the country and hire new counsel to assist her in obtaining an E-2 Visa. E.V. was unable to perform her job duties for her employer as a result of the respondent's misconduct and lost roughly three months of pay because of his error. C.W. was also injured by the respondent. Because of the respondent's misconduct, C.W. was delayed in obtaining her British passport. Eventually, C.W. received her passport nine days after making an application on her own. All three of the respondent's clients in these cases also suffered financial injuries. The respondent also injured the administration of justice, particularly with regard to the malpractice suit brought by E.V. The injury caused by the respondent to his clients and to the administration of justice is significant.

"88.    *Aggravating and Mitigating Factors*. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present:

a.    A Pattern of Misconduct. The respondent engaged in a pattern of misconduct. The respondent failed to secure trust accounts in Iowa and Kansas. The respondent has never properly safeguarded client funds. The respondent failed to competently or diligently represent J.W., T.W., E.V., and C.W. The hearing panel concludes that the respondent engaged in a pattern of misconduct.

25

b.    Multiple Offenses. The respondent committed multiple rule violations. The respondent violated KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 1.5, KRPC 1.15, KRPC 1.16, KRPC 3.2, KRPC 8.3, KRPC 8.4, Kan. Sup. Ct. R. 207, and Kan. Sup. Ct. R. 211. Accordingly, the hearing panel concludes that the respondent committed multiple offenses.

c.    Vulnerability of Victim. J.W., T.W., E.V., and C.W. were not versed in immigration law. As a result, they were vulnerable to the respondent's misconduct.

d.    Indifference to Making Restitution. The respondent's three clients were injured financially by the respondent's misconduct. While the respondent refunded the filing fees paid by J.W. and T.W., the respondent did not refund the attorney fees. J.W. and T.W. received no benefit from the fees paid to the respondent. The respondent failed to pay the judgment entered against him in the malpractice case brought by E.V. and her employer. C.W. was dissatisfied with the respondent's offer to refund $250.00. Thus, the respondent was indifferent to making restitution.

"89.    Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

a.    Absence of a Prior Disciplinary Record. The respondent has not previously been disciplined. While the respondent was reprimanded by the Iowa Supreme Court, the underlying misconduct is being considered in this case. Thus, the discipline imposed in Iowa does not constitute a prior disciplinary offense.

b.    Absence of a Dishonest or Selfish Motive. The respondent's misconduct does not appear to have been motivated by dishonesty or selfishness.

26

c.       Personal or Emotional Problems if Such Misfortunes Have Contributed to Violation of the Kansas Rules of Professional Conduct. The respondent suffers from anxiety and depression. It is clear that the respondent's anxiety and depression contributed to his misconduct.

d.       The Present and Past Attitude of the Attorney as Shown by His Cooperation During the Hearing and His Full and Free Acknowledgment of the Transgressions. While the respondent did not file an answer to the formal complaint, he did provide a response to the initial complaints filed by J.W., E.V., and C.W. Additionally, the day before the hearing, the respondent stipulated that he violated many disciplinary rules. During the hearing, the respondent agreed to refund the filing fees and $750.00 of the $1,000.00 attorney fees paid to C.W., though the panel is not aware of whether such action has been taken to date.

e.       Inexperience in the Practice of Law. The Kansas Supreme Court admitted the respondent to the practice of law in 2012. The respondent is inexperienced in the practice of law and his inexperience is a compelling mitigation consideration in this case.

f.       Imposition of Other Penalties or Sanctions. E.V. and her employer obtained a judgment against the respondent in excess of $22,000. While the respondent has not paid the judgment, E.V. and her employer continued to attempt to collect the judgment.

g.       Remorse. At the hearing on this matter, the respondent expressed genuine remorse for having engaged in the misconduct.

"90.     In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

27

'4.12    Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client.

'4.42    Suspension is generally appropriate when:

(a)    a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or

(b)    a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

'4.53    Reprimand is generally appropriate when a lawyer:

(a)    demonstrates failure to understand relevant legal doctrines or procedures and causes injury or potential injury to a client; or

(b)    is negligent in determining whether he or she is competent to handle a legal matter and causes injury or potential injury to a client.

'6.22    Suspension is appropriate when a lawyer knowingly violates a court order or rule, and there is injury or potential injury to a client or a party, or interference or potential interference with a legal proceeding.

'7.2    Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.'

"91.    The deputy disciplinary administrator recommended that the respondent's license be suspended for an indefinite period of time. The respondent recommended that his plan of probation be adopted and that he be allowed to continue practicing law.

"92.    The respondent's request for probation was made untimely. Accordingly, under Kan. Sup. Ct. R. 211(g)(3), the hearing panel is prohibited from recommending that the respondent be placed on probation.

*"Recommendation of the Hearing Panel*

"93.    During the disciplinary hearing held on May 23, 2017, the hearing panel became concerned about the respondent's competence to practice law and the risk the respondent presented to current and future clients. The same causes for concern exist now that existed when the hearing panel recommended that the Kansas Supreme Court temporarily suspend the respondent during the course of these disciplinary proceedings (see paragraph 66 above).

"94.    The hearing panel does not believe the respondent's misconduct is of a willful nature, but based on all the evidence presented at the hearing, the hearing panel concludes that the respondent is not competent to continue in the practice of law at this time. Accordingly, based upon the respondent's stipulations, the findings of fact, the conclusions of law, and the Standards listed above, the hearing panel unanimously recommends that the respondent be indefinitely suspended.

"95.    Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator."

DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 211(f) (2018 Kan. S. Ct. R. 251). Clear and convincing evidence is "'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable."'" *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

Respondent was given adequate notice of the formal complaint, to which he failed to file an answer, and adequate notice of the hearings before the panel and this court for which he appeared. The respondent did not file exceptions to the panel's final hearing report; however, respondent filed a document entitled "pleading" in which he admitted that he violated KRPC 1.1 (2018 Kan. S. Ct. R. 289) (competence); 1.3 (2018 Kan. S. Ct. R. 292) (diligence); 1.5 (2018 Kan. S. Ct. R. 294) (fees); 1.16 (2018 Kan. S. Ct. R. 333) (termination of representation); 3.2 (2018 Kan. S. Ct. R. 343) (expediting litigation); 3.4(c) (2018 Kan. S. Ct. R. 347) (fairness to opposing party and counsel); 8.3 (2018 Kan. S. Ct. R. 380) (reporting professional misconduct); 8.4(d) (2018 Kan. S. Ct. R. 381) (engaging in conduct prejudicial to the administration of justice); and Kansas Supreme Court Rules 207 (2018 Kan. S. Ct. R. 246) (failure to report action); and 211 (2018 Kan. S. Ct. R. 251) (failure to file answer in disciplinary proceeding). As such, the findings of fact are deemed admitted. Supreme Court Rule 212(c), (d) (2018 Kan. S. Ct. R. 255). He also admitted, but was not charged with, violating KRPC 8.1(b) (2018 Kan. S. Ct. R. 379) (failure to disclose a fact necessary to correct a misapprehension known by respondent).

Furthermore, the evidence before the panel establishes by clear and convincing evidence the charged misconduct violated KRPC 1.1, 1.3, 1.4(a), 1.5, 1.15(a), 1.16(d), 3.2, 3.4(c), 8.4(d), 8.3(a), Kansas Supreme Court Rule 207(c), and Kansas Supreme Court Rule 211(b), and it supports the panel's conclusions of law. We adopt the panel's conclusions.

The only remaining issue before us is the appropriate discipline for respondent's violations. At the panel hearing, the Deputy Disciplinary Administrator recommended indefinite suspension from the practice of law. The respondent recommended probation according to his probation plan. The panel did not recommend probation because respondent failed to timely file his probation plan. The panel agreed with the Deputy Disciplinary Administrator and recommended indefinite suspension.

At the hearing before this court, the Deputy Disciplinary Administrator again recommended indefinite suspension. Respondent agreed with that recommendation.

This court agrees with the recommendation of the Deputy Disciplinary Administrator and holds that respondent's license to practice law in the state of Kansas be indefinitely suspended and that he undergo a reinstatement hearing pursuant to Rule 219(d) (2018 Kan. S. Ct. R. 264).

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Matthew Edgar Hult be and he is hereby disciplined by indefinite suspension in accordance with Supreme Court Rule 203(a)(2) (2018 Kan. S. Ct. R. 234), effective on the filing of this decision.

31

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.